IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| HUBBELL POWER SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FIVE STAR NETWORKS INC., a Bahamian corporation,<br><br>Serve:<br>Registered Agent<br>Sterling Management Limited, 2nd Floor<br>Ansbacher House<br>Nassau, Bahamas,<br><br>Defendant. | Case No. 11-CV-00459 |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Hubbell Power Systems, Inc., by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 65(b) and 28 U.S.C. § 2201, alleges and states the following:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Hubbell Power Systems, Inc. ("Hubbell") is a Delaware corporation with its principal place of business in Centralia, Missouri. A.B. Chance f/k/a A.B. Chance Company is now an unincorporated division of Hubbell.

2. Defendant Five Star Networks Inc. ("Five Star") is a corporation with its principal place of business in Nassau, Bahamas. Five Star can be served by private process server at the address listed in the caption.

3. This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Five Star because it transacted business in the State of Missouri pursuant to a License Agreement that is the subject of this Verified Complaint.

5. Venue is proper because the parties transacted business and have performed pursuant to a License Agreement through the parties' acts and/or omissions in this district.

6. This Court may render a declaratory judgment pursuant to 28 U.S.C. §2201 to determine the rights and obligations of the parties under the License Agreement alleged herein.

7. This Court may issue injunctive relief pursuant to Federal Rule of Civil Procedure 65.

## BACKGROUND FACTS

8. Five Star and A.B. Chance n/k/a Hubbell entered into a License Agreement dated March 15, 1999, as amended on March 3, 2009 and September 8, 2009 (the "License Agreement"). A true and correct copy of the License Agreement as amended is attached hereto as Exhibit A.

9. The License Agreement provides that Five Star, as the patent holder of the PULLDOWN™ Pile, agrees to license to Hubbell the exclusive right to use the PULLDOWN Pile name, marks, and patented technology throughout the entire world, except for Europe and the western Canadian Provinces of British Columbia, Alberta, Saskatchewan, and Manitoba. *See* License Agreement, Amendment No. 1, ¶1.4, Ex. A.

10. The Helical PULLDOWN Micropile (HPM) is a patented process whereby a screw anchor is placed into the soil by applying torque. The helical shape of the bearing plates

creates a force that keeps the anchor advancing downward into the soil. After the lead section with the helical plates penetrates the soil, a lead displacement plate and extension are bolted onto the shaft. Resuming torque on the assembled shaft advances the helical plates and pulls the displacement plate downward, forcing soil outward to create a cylindrical void around the shaft. From a reservoir at the surface, grout, such as cement, immediately fills this void, surrounding and encapsulating the shaft. Additional extensions and displacement plates are added until the helical bearing plates reach competent load-bearing soil. This displacement pile system does not require removing soils from the site. The HPM technology allows the construction of firm foundations and footings in otherwise loose soil not suitable for construction.

11. The term "PULLDOWN PILE" is defined in paragraph 1.3 of the License Agreement:

> The term PULLDOWN PILE means any and all methods, products, and systems which employ, or are produced by the practice of, inventions within the scope of any claim of the LICENSED PATENTS. To the extent that any method, product, or system not within the scope of any claim of the LICENSED PATENTS is or has been promoted, offered for sale, or sold by 5 STAR under the mark PULLDOWN™ Pile as of the date that this agreement is executed by CHANCE, then the term PULLDOWN PILE shall also mean such methods, products, and systems.

12. Paragraph 6.2 of the License Agreement states:

> Chance agrees to:
>
> (a) fund third party long term performance verification testing of the PULLDOWN PILE, not to exceed One Hundred Thousand U.S. Dollars (100,000 U.S.), such testing according to the time line in Addendum B;
>
> (b) at CHANCE'S discretion, develop, produce, and distribute training and promotional literature relating to the PULLDOWN™ Pile;
>
> (c) reasonably promote the PULLDOWN PILE through its sales channels, and to reasonably support the promotion with training and customer service and appropriate in-housing engineering;

(d) educate all appropriate CHANCE application engineers as to the advantages of, the performance of, and the characteristics of the PULLDOWN PILE to a degree that it can be appropriately recommended by all appropriate CHANCE Application Engineers;

(e) reasonably promote the PULLDOWN PILE through civil construction distributors and dealer channels;

(f) Provide 5 STAR an opportunity to review all of CHANCE'S proposed promotional literature relating to the PULLDOWN PILE before publication for errors in piling technology, provided, however, that in the event that 5 STAR does not respond to CHANCE'S request for review of any such promotional literature with ten (10) days from receipt of such request, then 5 STAR shall be deemed to have reviewed such literature for publication.

13. The License Agreement provides that Hubbell is to compensate Five Star for the license pursuant to a fee payment "based on the total unit quantity of Displacement Plates sold by CHANCE during the calendar quarter and an algorithm outlined in ATTACHMENT C." *See* License Agreement, Amendment No. 1, Attachment A.

14. The algorithm in Attachment C to Amendment No. 1 of the License Agreement is as follows: Material Cost x Full Margin x 13.07% = Payment.

15. Hubbell agreed to add 10% to the algorithm to account for Displacement Plates otherwise unaccounted for because dealers and installers have been known to manufacture their own Displacement Plates and/or purchase plates from other manufacturers and modify them accordingly; therefore, the parties agreed to multiply 11.88 x 1.1 to arrive at 13.07% as the Payment to Five Star.

16. On March 25, 2011, Five Star's President, Mr. Brian Longpre, sent correspondence to Mr. John Bliven of Hubbell raising two separate complaints: (a) that Hubbell was not abiding by its obligations under paragraph 6.2 of the License Agreement with respect to marketing, promoting, educating, and developing the hollow shaft HPM technology, one of the products/methods encompassed within the definition of "PULLDOWN Pile" in paragraph 1.3 of the License Agreement; and (b) that Hubbell owed royalty payments for sales of Displacement

Plates since 2007 in western Canada, a territory not within Hubbell's License Agreement, as well as for unaccounted sales of Displacement Plates since 2007 in California. A true and correct copy of Five Star's correspondence to Mr. Bliven dated March 25, 2011 is attached hereto as Exhibit B.

17. In the March 25, 2011 correspondence, Five Star provided notice that it was terminating the License Agreement within sixty (60) days with respect to Hubbell's use of hollow shaft HPM technology. *See id.*

18. Also in the March 25, 2011 correspondence, Five Star demanded that Hubbell remit payment for all alleged unpaid royalty fees for sales in western Canada, a territory not within Hubbell's License Agreement, and that Hubbell remit payment for all alleged unpaid royalty fees for unaccounted sales of Displacement Plates in California since 2009. *See id.*

19. Hubbell, by and through counsel, sent correspondence dated April 4, 2011 to Five Star indicating Hubbell needed additional time to investigate and to respond to the demand letter. A true and correct copy of the correspondence dated April 4, 2011 is attached hereto as Exhibit C.

20. Hubbell, by and through counsel, sent correspondence dated April 21, 2011 to Five Star denying that it owed any royalty payments for sales in western Canada since 2007 and/or sales in California since 2009. Hubbell also denied that it had not reasonably promoted, developed, and marketed HPM technology. A true and correct copy of the correspondence dated April 21, 2011 to Five Star is attached hereto as Exhibit D.

21. At Hubbell's offering, a meeting was suggested, but the parties have not resolved their dispute.

## COUNT I- TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

22. Hubbell incorporates by reference all preceding paragraphs of this Verified Complaint as if set forth fully herein.

23. Hubbell is likely to have success on the merits of its claims as alleged herein.

24. Hubbell has no adequate remedy at law to prevent Five Star from prematurely terminating the License Agreement with respect to the hollow shaft HPM.

25. Further, no adequate remedy at law exists for Hubbell if Five Star is permitted to terminate the License Agreement with respect to the hollow shaft HPM and re-license the patented technology to one of Hubbell's competitors in the industry.

26. Hubbell would sustain immediate and irreparable injury if Five Star is permitted to terminate the License Agreement with respect to the hollow shaft HPM and re-license the patent to one of Hubbell's competitors.

27. Unless Five Star is enjoined from terminating the License Agreement, Hubbell will sustain immediate and irreparable damage because it will lose its exclusive use and ability to sell patented technology for the hollow shaft HPM within its exclusive territory, and its competitors in the industry will gain the use of this proprietary information and technology allowing business relationships to develop between Hubbell's competitors and Hubbell's exclusive distributors and dealers of the HPM technology.

28. In contrast, no irreparable harm will be sustained by Five Star if injunctive relief is granted except for the mere delay of time to preserve the status quo of the parties' relationship.

29. The issuance of injunctive relief is in the public's interest under these circumstances because it will prevent Five Star from prematurely and unlawfully terminating a License Agreement and will prevent Hubbell's dealers and distributors from obtaining the hollow shaft HPM technology from one of Hubbell's competitors.

WHEREFORE, Hubbell respectfully requests a temporary restraining order and a preliminary injunction to enjoin Five Star from prematurely terminating the License Agreement, which will result in immediate and irreparable damage for Hubbell because Hubbell will lose its exclusive right to sell the hollow shaft HPM technology, and its competitors will gain the use of this proprietary and patented information and technology; for an order to preserve the status quo of the parties to allow this Court to determine the respective rights and obligations of the parties under the License Agreement as sought below, and for such other and further relief as the Court deems just and proper.

### COUNT II- REQUEST FOR DECLARATORY JUDGMENT REGARDING LICENSE AGREEMENT'S TERMS FOR USE OF HOLLOW SHAFT HPM TECHNOLOGY

30. Hubbell incorporates by reference all preceding paragraphs of this Verified Complaint as if set forth fully herein.

31. The term "PULLDOWN PILE" is defined in the License Agreement pursuant to paragraph 1.3 as a general description of all products developed and patented by the principals of Five Star and licensed to Hubbell for use and sale.

32. The obligations of Hubbell under section 6.2 of the License Agreement do not require Hubbell to devote equal resources and efforts in developing, producing, promoting and distributing the hollow shaft HPM in relation to the other Licensed Patents for the PULLDOWN PILE.

33. Hubbell is obligated under the License Agreement to "reasonably promote" and, "at its discretion," develop, produce and distribute training, promotional, and educational literature for the "PULLDOWN PILE."

34. The history of Hubbell's promotion and development of the PULLDOWN PILE, as that term is collectively defined in the License Agreement, is extensive, including creating and

disseminating promotional literature, training distributors and engineers on the use of HPM technology, and spending hundreds of thousands of dollars and countless hours in researching and educating customers about HPM technology over the last decade.

35. During that time, Five Star has not complained or sent written demands to Hubbell (until now) warning or admonishing Hubbell that it had not developed, distributed or promoted the hollow shaft HPM in a reasonable manner, or that Hubbell was not adequately testing the product or educating engineers in the use of the hollow shaft HPM.

36. Hubbell has complied with its obligations, to be conducted at its discretion and in a reasonable manner, with respect to the "PULLDOWN PILE," as that term is collectively defined in the License Agreement.

37. Hubbell is presented with a real, substantial, and presently existing controversy with Five Star regarding the interpretation and enforcement of the License Agreement with respect to whether Hubbell has complied with paragraph 6.2 of the License Agreement.

38. Hubbell has the right to the specific relief permitted under 28 U.S.C. §2201.

39. Hubbell has a legally protected interest in the License Agreement, and said legal interests will cease or be seriously impaired if Five Star is permitted to terminate the License Agreement with respect to the hollow shaft HPM technology, thereby allowing Five Star to re-license the hollow shaft HPM technology to a competitor.

40. The controversy presently existing as alleged herein is ripe for judicial determination to clarify the parties' legal relations and to afford relief from the uncertainty giving rise to these proceedings.

41. Hubbell seeks the Court's declaration and ruling that Hubbell has complied with its obligations under paragraph 6.2 of the License Agreement, and that Five Star does not have

the right to terminate the License Agreement as threatened concerning the hollow shaft HPM technology.

WHEREFORE, Hubbell prays that the Court interpret the License Agreement and render a declaratory judgment ruling that Hubbell has fulfilled its obligations under the License Agreement pursuant to paragraph 6.2, and for any further relief the Court deems just and proper.

## COUNT III- REQUEST FOR DECLARATORY JUDGMENT CONCERNING ROYALTY PAYMENTS FOR SALES IN WESTERN CANADA

42. Hubbell incorporates by reference all preceding paragraphs of this Verified Complaint as if set forth fully herein.

43. Five Star alleged in its demand letter of March 25, 2011, that royalty payments are owed on Displacement Plates that were manufactured and/or used in western Canada, which is territory not within the exclusive License Agreement between Hubbell and Five Star. *See* Amendment No. 1 to the License Agreement, ¶1.4, Ex. A.

44. The License Agreement between Five Star and Hubbell specifies royalty payments are due for Displacement Plates "sold by Chance." *See* Attachment A (Revision A) to the License Agreement, Ex. A.

45. To the extent that companies other than Hubbell manufactured plates and/or used plates not sold by Hubbell, Hubbell does not owe royalty fees to Five Star.

46. Hubbell is presented with a real, substantial, and presently existing controversy with Five Star regarding the interpretation and enforcement of the License Agreement with respect to whether Hubbell has complied with the License Agreement.

47. Hubbell has the right to the specific relief permitted under 28 U.S.C. §2201.

48. Hubbell has a legally protected interest in the License Agreement, and said legal interests will cease or be seriously impaired if Five Star is permitted to terminate the License Agreement over the royalty payments allegedly owed.

49. The controversy presently existing as alleged herein is ripe for judicial determination to clarify the parties' legal relations and to afford relief from the uncertainty giving rise to these proceedings.

50. Hubbell seeks the Court's declaration and ruling that Hubbell has complied with its obligations under the License Agreement, and that Five Star does not have the right to terminate the License Agreement over the royalty payments allegedly owed for sales of Displacement Plates in western Canada since 2007 by an entity or person other than Hubbell.

WHEREFORE, Hubbell prays that the Court interpret the License Agreement and render a declaratory judgment ruling that Hubbell owes no royalty payments to Five Star for any sales in western Canada since 2007, that Hubbell has fulfilled its obligations under the License Agreement pursuant to Amendment No. 1 to the License Agreement, Attachments A and C, and for any further relief the Court deems just and proper.

### COUNT IV- REQUEST FOR DECLARATORY JUDGMENT REGARDING ROYALTY PAYMENTS FOR PURPORTED SALES IN CALIFORNIA

51. Hubbell incorporates by reference all preceding paragraphs of this Verified Complaint as if set forth fully herein.

52. Five Star alleges certain projects in California were performed by Mr. John Whittam of JRW Foundations for which Mr. Bob Vickars, one of the principal owners of Five Star, served as a consultant.

53. Upon information and belief, Mr. Vickars concluded that royalty fees for these projects are owed by Hubbell to Five Star.

54. Hubbell, however, has no knowledge of those jobs outside of what was conveyed by Mr. Vickars and conversations with Mr. Whittam.

55. Hubbell's representatives verified with Mr. Whittam that the Displacement Plates, equipment, and techniques used by Mr. Whittam on projects in California alleged herein were specially fabricated by Mr. Whittam and were not sold or manufactured by Hubbell.

56. In addition, Mr. Whittam advised Hubbell's representatives that he purchased extra Displacement Plates from Hubbell for projects in 2006 and 2007. He has used those excess Displacement Plates on other recent projects; therefore, Hubbell owes no additional royalties to Five Star for Mr. Whittam's use of the Displacement Plates.

57. In addition, the agreed-upon algorithm for sales of Displacement Plates pursuant to Amendment No. 1 to the License Agreement provides for an additional 10% "consulting fee" on the full margin value of the specified products, which effectively provides additional compensation to Five Star based on the parties' acknowledgment that some dealers or installers may manufacture their own Displacement Plates, such as Mr. Whittam, preventing Hubbell from the opportunity to sell Displacement Plates and, thereby, precluding Five Star from royalty payments that would otherwise be owed if Hubbell had manufactured and sold the product.

58. The payment algorithm in Amendment No. 1 is: Material Cost x Full Margin x 13.07% = Payment. This calculation is derived from the following formula: Material Cost x Full Margin x 11.88% = Payment. In Amendment No. 1, Hubbell agreed to add 10% to 11.88% to account for Displacement Plates otherwise unaccounted for through no fault of Hubbell; so the parties agreed to multiply 11.88 x 1.1 to arrive at 13.07%.

59. Five Star has already been paid this consulting fee, and any additional royalty payments would amount to a double payment to Five Star.

60. Pursuant to Attachment C to Amendment No.1 of the License Agreement, the parties agreed to this mathematical formula to address this speculative issue.

61. Hubbell is presented with a real, substantial, and presently existing controversy with Five Star regarding the interpretation and enforcement of the License Agreement with respect to whether Hubbell has complied with the License Agreement.

62. Hubbell has the right to the specific relief permitted under 28 U.S.C. §2201.

63. Hubbell has a legally protected interest in the License Agreement, and said legal interest will cease or be seriously impaired if Five Star is permitted to terminate the License Agreement over the royalty payments allegedly owed.

64. The controversy presently existing as alleged herein is ripe for judicial determination to clarify the parties' legal relations and to afford relief from the uncertainty giving rise to these proceedings.

65. Hubbell seeks the Court's declaration and ruling that Hubbell has complied with its obligations under the License Agreement, and that Five Star does not have the right to terminate the License Agreement over the royalty payments allegedly owed for sales in California since 2009.

WHEREFORE, Hubbell prays that the Court render a declaratory judgment, ruling Hubbell owes no royalty payments to Five Star for sales in California since 2009, that Hubbell has met its obligations under Amendment No. 1 to the License Agreement, Attachments A and C, and for any further relief the Court deems just and proper.

ARMSTRONG TEASDALE LLP

By: /s/ Darren K. Sharp
    Edward R. Spalty    MO #26086
    Darren K. Sharp    MO #50841
    espalty@armstrongteasdale.com
    dsharp@armstrongteasdale.com
    2345 Grand Boulevard, Suite 2000
    Kansas City, Missouri 64108-2617
    (816) 221-3420
    (816) 221-0786 (facsimile)

ATTORNEYS FOR PLAINTIFF
HUBBELL POWER SYSTEMS, INC.

The allegations of this Verified Complaint for Declaratory Judgment and Injunctive Relief are true to the best of my knowledge and belief.

_____
John Bliven, authorized representative of
Hubbell Power Systems, Inc.